**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **LAKEY L. DAVENPORT**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 20-cv-1207 (TSC) |
| | ) |
| **SAFEWAY, INC.**, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Lakey L. Davenport was working for a third-party vendor at a Safeway store in Washington, D.C., when she slipped on a rogue shrimp and fell, sustaining personal injuries. She sued Safeway, alleging that the store was negligent in failing to properly inspect and maintain the floor and/or warn her of any unsafe conditions, and that the store's negligence caused her fall and resulting injuries. Safeway moves for summary judgment and moves *in limine* to exclude Davenport's expert witness, Michael D. Leshner, from testifying at trial.

For reasons explained below, the court will DENY Safeway's Motion for Summary Judgment, ECF No. 20, and GRANT Safeway's Motion *in Limine*, ECF No. 21.

## I.      BACKGROUND

On February 14, 2018, Davenport was working for a third-party vendor, KeHe Distributors, LLC, stocking shelves at a Safeway store located at 1855 Wisconsin Avenue, NW, Washington, D.C.  Def. Mot. Summ. J. ("Def. MSJ"), Ex. A, Davenport Dep. Tr. at 22:22–23:8, 26:22.  She was responsible for bringing boxes of items from the store's basement and stocking those items on the store's shelves.  *Id.* at 23:20–28:4.

Safeway maintained a "floor care program," pursuant to which employees were instructed to sweep the store's floors once at the top of the hour and inspect or sweep the floors at the bottom of the hour.  Def. MSJ, Ex. B, Walden Dep. Tr. at 18:5–19; ECF 25–2, Pl. Statement of Disputed Facts ("Pl. SDF") ¶¶ 10–11.  According to James Walden, Safeway's Director of Food Safety and Occupational Safety, the store also maintained an "educational information plan," and distributed a monthly safety "advertisement" to employees.  *Id.* at 25:3–9.  Walden testified that at least once per year, the safety advertisement's focus is preventing slip and falls by instructing employees to address hazards as they see them.  *Id.* at 25:9–14; *see also* ECF No. 25–3, Ex. 2, Leshner Rep. at 11.

The store maintained a "Sweep Log," recording when the floors were swept and by whom.  Def. MSJ at 8; Walden Dep. Tr. at 26:15–21; Pl. SDF ¶ 11; Leshner Rep. at 10.  The store's Sweep Log shows that on the day Davenport fell, employees swept roughly every 30 minutes, and that employee Andre Council swept at 12:31 p.m., 1:09 p.m., and 1:34 p.m. Leshner Rep. at 10.  The record does not indicate the specific aisles or walkways that Council swept.  *See id.*

Safeway claims that "hourly floor sweeps were completed at the store up to the time [Davenport] slipped and fell."  Def. MSJ at 5.  Davenport, however, disputes two aspects of that assertion.  First, she argues that video surveillance shows that during the 1:34 p.m. sweep, Council did not sweep the area in front of the freezer case where Davenport later slipped and fell. Pl. SDF ¶ 11 (citing Leshner Rep. at 4).  Second, she contends that after the 1:34 p.m. sweep, Safeway employees did not conduct another floor inspection or sweep at the top of the hour, as required by the "floor care program," and did not conduct another inspection or sweep until 4:30 p.m.  *Id.*; Leshner Rep. at 9–10.

At approximately 2:22 p.m., Davenport walked by a freezer case near the store's fresh seafood counter.  Def. MSJ at 2; Davenport Dep. Tr. at 28:5–8; ECF No. 25, Pl. Opp'n to Mot. Summ. J ("Pl. Opp'n to MSJ") at 3.  She was not looking down and did not notice that a lone, raw shrimp lay in her path.  Davenport Dep. Tr. at 38:11–39:9.  She slipped, fell, and allegedly injured her right wrist, neck, and back.  ECF No. 6, Compl. ¶ 9.  *But see* Davenport Dep. Tr. at 59:2–16 (testifying that she sustained injuries to her left hand and left knee and did not suffer any other injuries).  After her fall, Davenport noticed one or two drops of water on the floor, along with a "smushed shrimp" she blames for her slip.  *Id.* at 31:22–32:4.  She testified that she believes the shrimp likely came from the fresh seafood counter located near the scene of the accident, *see id.* at 52:1–53:19, but the parties have no explanation for when or how the shrimp escaped the confines of the seafood section and arrived on the floor.  Def. MSJ at 5; Pl. SDF ¶ 10.

Davenport designated Michael Leshner, a professional engineer, to provide expert testimony regarding the accident and Safeway's liability.  Leshner is a mechanical engineer with self-reported expertise in "forensic engineering, safety engineering, consumer products, and industrial products."  Leshner Rep. at 1.  Leshner viewed video surveillance of the accident and "the file"—presumably documents produced during discovery—and prepared a Preliminary Report in which he opined:

> Based on the materials I have reviewed, the incident occurred as reported. Ms. Davenport slipped because a slippery foreign object remained on the floor, was not swept up, and she did not see it before slipping and falling.
>
> Safeway has a policy of sweeping the entire lobby, grocery area, produce area and restrooms at least once every 30 minutes. The incident area was swept at 1:31 as shown in photos 3, 4, and 5. That area was not swept again for another three hours, during which time this incident occurred. Such policies are required to maintain compliance with industry standards such as the Property Maintenance Code and other DC regulations.

> If Safeway had complied with industry codes, standards and regulations in addition to their own internal safety policies, the floors would have been kept free of foreign objects and carts would not be placed as shown in photo 5, making it difficult to observe the floor and keep it clean. This incident and resulting injuries occurred because the property was not maintained adequately.

*Id.* at 13-14.  Leshner then reached the following four conclusions:

1. The incident was caused by Safeway's failure to properly maintain safe walking surfaces;

2. Safeway violated industry standards, including the DC Property Maintenance Code;

3.  Davenport did not cause or contribute to the incident; and

4.  Had Safeway complied with industry and internal safety procedures, the incident would not have occurred.

*See id.* at 1, 14.

In his report, Leshner contends that in reaching these conclusions, he applied methods that are "generally accepted in the community of Professional Engineers;" methods which he "routinely appl[ies] in the practice of professional engineering."  *Id.* at 1.

During his deposition, when pressed on the basis for his opinion that Davenport slipped on a foreign object, Leshner testified that he "understand[s] the mechanics of human locomotion" and "how people walk," and that when he reviewed the video footage of Davenport's fall, he observed Davenport's lead foot slide out ahead of her.  Pl. Opp'n to MSJ, Ex. 2, Leshner Dep. Tr. at 14:5–17, 15:4.  He also testified that he did not rely on any engineering book or topic in reaching that opinion, and was "not sure" whether his opinion "draws upon [his] forensic engineering experience or [his] mechanical engineering experience."  *Id.* at 15:3, 15:14–21.

Safeway moves for summary judgment and moves *in limine* to exclude Leshner from testifying at trial.

## II.    LEGAL STANDARD

### A.  Motion for Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim or defense." Fed. R. Civ. P. 56(a).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination. An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb*, 433 F.3d at 895 (quoting *Liberty Lobby*, 477 U.S. at 248) (citation omitted). The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S.

at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006) ("We view the evidence in the light most favorable to the nonmoving party and draw all inferences in its favor."). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant is "required to provide evidence that would permit a reasonable jury to find [in his favor]." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

### B. <u>Admissibility of Expert Testimony</u>

A district court has "great discretion" in determining whether to admit or exclude expert testimony. *United States v. Morgan*, 45 F.4th 192, 200 (D.C. Cir. 2022). Under Federal Rule of Evidence 702, which governs the admissibility of expert testimony, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify . . . if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Under Rule 702, "trial courts are required to act as gatekeepers who may only admit expert testimony if it is both relevant and reliable." *Heller v. District of Columbia*, 952 F. Supp. 2d 133, 139 (D.D.C. 2013) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (applying *Daubert*'s holding to non-scientific expert testimony)).

### III.   ANALYSIS

#### A. **Motion for Summary Judgement**

In a negligence action brought under District of Columbia law, such as this one, the plaintiff "has the burden of establishing the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between the deviation and the plaintiff's injury." *Young v. District of Columbia*, 752 A.2d 138, 145 (D.C. 2000) (internal quotation marks omitted); *see also Martin v. Omni Hotels Mgmt. Corp.*, 206 F. Supp. 3d 115, 121 (D.D.C. 2016). "It is established law in this jurisdiction that a storekeeper is not an insurer or guarantor of his customers' safety . . . [and] the mere happening of an accident does not impose liability or permit an inference of negligence." *Napier v. Safeway Stores, Inc.*, 215 A.2d 479, 480 (D.C. 1965). Rather, "[t]he burden rests upon the customer to prove the proprietor was negligent in either creating the alleged condition or in permitting it to continue and that this negligence was the proximate cause of the injuries." *Id.* And "[i]t is axiomatic that under a negligence regime, one has a duty to guard against only foreseeable risks." *Novak v. Cap. Mgmt. & Dev. Corp.*, 452 F.3d 902, 911–12 (D.C. Cir. 2006) (internal quotation marks omitted).

In the context of slip and fall premises liability cases, a plaintiff must establish either actual or constructive notice of the dangerous condition. *See Hudson v. Harris Teeter, LLC*, 292 F. Supp. 3d 496, 499 (D.D.C. 2018). Constructive notice exists where the dangerous condition existed for a long enough period that the owner of the premises should have been aware of it. *See id.* (noting that where a negligence claim is "predicated upon the existence of a dangerous condition it is necessary to show that the party against whom negligence is claimed had actual notice of the dangerous condition or that the condition had existed for such length of time that, in the exercise of reasonable care, its existence should have become known and corrected"); *see*

*also Sullivan v. AboveNet Commc'ns, Inc.*, 112 A.3d 347, 356 (D.C. 2015). In other words, absent evidence of actual notice, "it is incumbent upon the injured customer to establish a factual predicate sufficient to support a finding that the condition existed for such length of time that it should have become known and have been corrected." *Hudson*, 292 F. Supp. 3d at 499.

The parties dispute whether Safeway had constructive notice of the crustaceous hazard. Safeway argues that there is no evidence about when or how the shrimp arrived on the floor, or that any Safeway employee knew it was there. Safeway argues that, absent that evidence, Davenport cannot establish that Safeway breached a duty of care.

Davenport contends that had Safeway adhered to its "floor care program," and properly swept and/or inspected the area in front of the freezer case at 1:34 p.m. and again at the top of the hour, it might have discovered the errant shrimp and been able to mitigate the risk. In other words, "had Safeway actually swept the floor before the accident, instead of completely ignoring the area . . . the jury could definitively determine that the shrimp was not on the floor at" those times. Pl. Opp'n to MSJ at 12.

Notice is a question ordinarily left for the jury. *Hudson v. Harris Teeter*, LLC, 292 F. Supp. 3d 496, 499 (D.D.C. 2018). To be sure, "where there is *no* testimony about how a substance came to be on the floor or how long it had been there, or that any employee of [the defendant] knew of its existence, the court may properly decide the case as a matter of law because of [the] failure to present prima facie proof of liability." *Id.* at 499 (emphasis added) (internal quotation marks omitted). Here, however, the evidence suggests that had Safeway adhered to its own "floor care program," "a trier of fact could have determined with some assurance" the timing of the shrimp's arrival on the floor. *See WMATA v. Jeanty*, 718 A.2d 172, 178 (D.C. 1998). Safeway, having allegedly failed to sweep or inspect the freezer-case area at

1:34 p.m. and again at the top of the hour, "cannot now claim victory upon the ground that the plaintiff was unable to establish facts which the missed inspections might well have revealed." *Id.* Because there is a genuine dispute as to the material fact of constructive notice, summary judgment is inappropriate.

Safeway also argues that summary judgment is warranted because Davenport has failed to identify a standard of care. That argument fails for three reasons.

First, Davenport argues that Safeway breached the standard of care set forth in the International Maintenance Property Code, which requires that a "safe, continuous, and unobstructed path of travel shall be provided from any point in a building or structure to the Public Way." Pl. Opp'n at 9 (citing International Property Maintenance Code § 702.1); *see also Girdler v. United States*, 923 F. Supp. 2d 168, 189 (D.D.C. 2013) ("The D.C. Property Maintenance Code, in turn, consists of the . . . International Property Maintenance Code.").

Second, while "company rules are not 'conclusive' or 'wholly definitive'" of the standard of care, *WMATA v. Young*, 731 A.2d 389, 398 (D.C. 1999), such policies are "admissible as *bearing on the* standard of care," *Briggs v. WMATA*, 481 F.3d 839, 848 (D.C. Cir. 2007) (emphasis in original) (quoting *Clark v. D.C.*, 708 A.2d 632, 636 (D.C. 1997)). In other words, evidence regarding Safeway's compliance or failure to comply with its "floor care program"—a disputed matter—is admissible and bears on whether it exercised due care in this case. *See Garrison v. D.C. Transit System, Inc.*, 196 A.2d 924, 925 (D.C. 1964) ("[R]egulations of a defendant for guidance of its employees in the performance of their duties are admissible and may be considered on the issue of whether due care was exercised by the employee under the particular circumstances of the case.").

And third, in a "typical negligence case, the standard of care applicable to a person's conduct is simply that of a reasonable [person] under like circumstances[,]" and a jury can ordinarily "ascertain this standard without the aid of expert testimony." *Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (internal citation quotation marks omitted). Accordingly, issues of negligence are rarely appropriate for summary judgment. *Stehn v. Cody*, 962 F. Supp. 2d 175, 179 (D.D.C. 2013). As courts in the District of Columbia have repeatedly noted, "[o]nly in exceptional cases will questions of negligence [and] contributory negligence . . . pass from the realm of fact to one of law." *Paraskevaides v. Four Seasons Wash.*, 292 F.3d 886, 893 (D.C. Cir. 2002) (quoting *Shu v. Basinger*, 57 A.2d 295, 295–96 (D.C. 1948)). This is not the type of "exceptional" case that presents negligence questions for the court to decide as a matter of law.

Ultimately, because there are genuine disputes as to material facts bearing on Safeway's liability, the court will deny Safeway's motion for summary judgment.

## B. <u>Motion to Exclude Expert Testimony</u>

Safeway argues that Leshner's proposed expert testimony must be excluded under Rule 702. *See* ECF No. 21, Def. Mot. in Limine. First, Safeway contends that Leshner's opinion that Davenport slipped on a foreign object requires no specialized education or training and therefore is impermissible as expert opinion. *Id.* at 2–4. Second, Safeway argues that Leshner should not be permitted to testify that Safeway caused the accident by failing to maintain safe walking areas, or that Davenport did not contribute to the incident herself, because that testimony amounts to inappropriate legal conclusions and relies on speculation. *Id.* at 5–7. And third, Safeway argues that Leshner's opinion that Safeway failed to comply with industry and internal safety procedures is unfounded and irrelevant. *Id.* at 7–9.

In *Richter v. Virginia CVS Pharmacy, LLC*, No. 1:21-CV-00394 (E.D. Va. Nov. 19, 2021), the plaintiff sued CVS for negligence after an anti-theft device—a long pole attached to each shopping cart to prevent the shopping carts from being removed from the store—collided with the top of a door frame, allegedly causing plaintiff to fall and sustain injuries. *Richter*, 2021 WL 6334671, at *1. The plaintiff retained Leshner as an expert witness, and he prepared a preliminary report in which he concluded, in part, that: (1) the incident was caused by a hazardous condition at the CVS store, *i.e.*, the pole attached to the plaintiff's shopping cart; (2) the hazard caused the plaintiff to fall and become injured; (3) CVS violated industry standards, including the Virginia Property Maintenance Code; and (4) if CVS had complied with industry and internal safety procedures, this incident would not have occurred. *Richter*, 2021 WL 6125776, at *1. And, like this case, Leshner testified at his deposition that his "analysis is based on a detailed review of the video and screenshots from the video," and further states that the tools used were "my eyes and my brain and my training . . . No formulas or calculations were required." *Id.* The court granted the defendant's motion to exclude Leshner's testimony at trial, finding that Leshner did not apply scientific, technical, or specialized knowledge or methodology to arrive at his opinions, and that his opinions constitute inadmissible legal conclusions.

The same outcome is warranted here. Leshner does not state, either in his expert report or deposition testimony, how his experience or training informs his testimony. He stated that he understands "human locomotion," "how people walk" and "what causes them to fall," but conceded that he "can't point to a specific book or topic" that informs his understandings. Leshner Dep. Tr. at 14:6, 15:1–6. Moreover, the scientific methods that purportedly undergird his conclusions amount simply to "review[ing] the [security] video frame by frame." *Id.* at 32:2-13. A juror is equally qualified to review the same video frame by frame to make their own

factual findings. Leshner's testimony would not "help the trier of fact to understand the evidence or to determine a fact in issue" as required by Federal Rule of Evidence 702(a).

Leshner's testimony that Safeway violated industry standards, including the DC Property Maintenance Code, and that Safeway's compliance would have avoided the incident, are also impermissible. Leshner again fails to explain how his training or experience as an engineer informs those conclusions. The tenuous relationship between his experience and opinions was borne out at his deposition. He testified that he "didn't read Safeway's policies," *id.* at 49:12, and when asked whether he was "aware of any industry standards that dictate how often a store like Safeway should sweep its floors," he testified that he "couldn't point . . . to any specific policy," and was only aware of regulations that more generally require a store to "maintain a safe premises," *id.* at 51:13–21. Leshner confirmed that those regulations "don't tell [a store] how often to sweep." *Id.* at 52:4–5. He also conceded that one regulation cited in his report— ASTM-F 1637-13—is a "voluntary standard," that has not been adopted by the D.C. building or maintenance code, *id.* at 56:17–57:11, nor has another regulation he cites—NFPA 101—been adopted in D.C., *id.* at 57:12–14.

In short, Leshner's proposed expert testimony does not satisfy Rule 702's reliability requirement that expert testimony be "properly grounded, well-reasoned, and not speculative." Fed. R. Evid. 702 advisory committee's note. Although Leshner is an experienced engineer, "'the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express. . . . Quite simply, under Rule 702, the *reliability* criterion remains a discrete, independent, and important requirement for admissibility.'" *Heller*, 952 F. Supp. 2d at 141 (quoting *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (*en banc*) (emphasis

in original)).  Moreover, expert testimony about the standard of care is not required "if the subject matter is within the realm of common knowledge and everyday experience." *Hill v. Metro. Afr. Methodist Episcopal Church*, 779 A.2d 906, 908 (D.C. 2001) (internal citation and quotation marks omitted).

Leshner's opinions are also impermissible because they amount to legal conclusions.  His testimony would be that Safeway caused Davenport's fall by failing to adhere to industry standards, and that Davenport did not contribute to the incident.  Leshner Rep. at 14.  In other words, he seeks to testify about what result should be reached on the elements of negligence, and thus his opinion testimony is improper.  "Expert testimony that consists of legal conclusions cannot properly assist the trier of fact in either understanding the evidence or determining a fact in issue." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) (cleaned up).  "This is because legal conclusions intrude upon the duties of, and effectively substitute for the judgment of, the trier of fact and the responsibility of the Court to instruct the trier of fact on the law." *Atlanta Channel, Inc. v. Solomon*, No. CV 15-1823 (RC), 2020 WL 7013346, at *3 (D.D.C. Nov. 24, 2020) (cleaned up); *see also Burkhart*, 112 F.3d at 1212 ("[A]n expert may offer [an] opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but [the expert] may not testify as to whether the legal standard has been satisfied."); *U.S. ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002) ("[E]xpert testimony consisting of legal conclusions will not be permitted because such testimony merely states what result should be reached.").

Consequently, the court will grant Safeway's Motion *in Limine* to exclude Leshner's proposed testimony.

## IV.    CONCLUSION

For reasons set forth above, the court will DENY Safeway's Motion for Summary

Judgment, ECF No. 20, and will GRANT Safeway's Motion *in Limine*, ECF No. 21, to exclude

Leshner's expert testimony.


Date:  September 22, 2022

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge